IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00333-MR

| PAUL VALDEZ-BEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| KEVIN CASTELIN, et. al., | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 40], Plaintiff's "Memorandum in Support of Plaintiff Motion for Summary Judgement [*sic*]," and on Plaintiff's motions for extension of time to respond to Defendants' Motion for Summary Judgment [Docs. 42, 44].

**I.    PROCEDURAL BACKGROUND**

On December 3, 2019, Plaintiff Paul Valdez-Bey ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights. [Doc. 1]. Plaintiff's unverified Complaint, in which he named FNU Castalone, FNU Patton, and FNU Sims,[1] all identified as

---

[1] Defendant Castalone's true full name is Kevin Castelin; Defendant Patton's true full name is William Patton; and Defendant Sims true full name is Gregory Sims. [Docs. 40-

Officers at the Buncombe County Detention Center (the "Detention Center"), as Defendants, survived initial review as to Plaintiff's excessive force claim and his claim fairly arising under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. In short, Plaintiff alleges that he was on a kosher diet and served a diabetic food tray by Defendants Patton and Sims. After Plaintiff refused to eat the diabetic tray, Plaintiff claims that Defendants Castelin and Patton used excessive force on him. [Doc. 1]. On February 2, 2021, the Court entered a Pretrial Order and Case Management Plan, setting the discovery deadline for June 2, 2021 and the dispositive motions deadline for July 3, 2021. [Doc. 30]. No discovery motions were filed in this case by any party.

On June 3, 2021, Defendants filed a Motion for Summary Judgment. [Doc. 40]. Defendants argue that summary judgment should be granted because Plaintiff's claims fail as a matter of law, because Defendants did not use excessive force on Plaintiff, and because qualified immunity bars Plaintiff's claims against Defendants. [Id.]. In support of their summary judgment motion, Defendants submitted a brief, numerous affidavits, various

---

13, 40-15, 40-17]. The Court will instruct the Clerk to update the docket in this matter accordingly.

Detention Center records relating to Plaintiff, and an incident report. [Docs. 40-1 to 40-19].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 41]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

3

After filing two motions for more time to respond [Docs. 42, 44], which the Court will grant, Plaintiff filed a six-page memorandum that, although notarized, is not in the form of an affidavit or signed under penalty of perjury, [See Doc. 43]. As noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

At the relevant times, Defendants Castelin, Patton, and Sims worked as detention officers for the Buncombe County Sheriff. [Doc. 40-13 at ¶ 2: Castelin Aff.; Doc. 40-15 at ¶ 2: Patton Aff.; Doc. 40-1 at ¶ 2: Sims Aff.]. On November 28, 2018, while he was a detainee at the Detention Center, Plaintiff was placed on a kosher diet. [Doc. 40-2 at ¶ 5: Littrell Aff.; see Docs. 40-3, 40-4]. On December 12, 2018, Plaintiff pleaded guilty to two counts of being a felon in possession of a firearm in the Superior Court of Buncombe County. [Doc. 40-4].

On December 17, 2018, in accordance with his kosher diet plan, Plaintiff was to receive a kosher meal at 11:00 a.m. and 4:00 p.m. [Doc. 40-2 at ¶ 9; Doc. 40-5 at 1, 3]. That day, Defendant Sims was on meal service, which means ensuring all inmates in the housing unit receive their meals.

[Doc. 40-17 at ¶ 4]. According to the 4:00 p.m. meal plan, Plaintiff was to be provided a grilled cheese sandwich, green beans, pasta, vegan Jello, and, and a veggie patty. [Id. at ¶ 6]. At approximately 4:10 p.m., Plaintiff approached Defendant Sims and complained that there was paper in his noodles. Plaintiff asked to get another meal tray or the hamburger helper off a regular meal tray. [Id. at ¶ 7]. As Plaintiff was not allowed to have separate food items from different trays, Defendant Sims called the kitchen and requested another meal tray for Plaintiff. [Doc. 40-17 at ¶ 8].

When Defendant Sims saw Defendant Patton carrying the tray for Plaintiff, Defendant Sims called Plaintiff to get his new tray at the station.[2] [Id. at ¶¶ 9-10]. When Plaintiff walked up to get his tray, he wanted the grilled cheese sandwich from another tray. [Id. at ¶ 11]. Plaintiff was given the option of either taking the second tray or not, but he was not allowed to take items off other trays. [Id. at ¶ 12]. Plaintiff started to argue and threw his hands around his body "like a child." Plaintiff yelled that he was not going to eat the food on the second tray. [Id. at ¶ 13]. Detention officers commanded Plaintiff multiple times to go to his cell. He refused and said, "fuck y'all, take me to 4 west." [Id. at ¶ 14]. At this time, another inmate, Carlos Burton

---

[2] In their brief, Defendants tacitly concede that the second meal tray was diabetic, not kosher. [Doc. 40-1 at 9-11].

7

started yelling. All inmates were then ordered to their cells. [Id. at ¶¶ 15-16]. Defendant Sims then placed Plaintiff in handcuffs and Defendant Patton called for assistance over the radio. [Id. at ¶¶ 17-18; Doc. 40-15 at ¶ 11]. Defendants Castelin and Patton waited for the responding officers and a sergeant to arrive. [Doc. 40-15 at ¶ 11]. Sergeant Zabloudil, Defendant Castelin and Officers Rogers, Kelly, and McCoy responded to the call. [Id. at ¶ 12; Doc. 40-17 at ¶ 19]. Sergeant Zabloudil was briefed on the incident and decided that Plaintiff and Burton would be sent to Housing Unit 4 West. [Doc. 40-12 at ¶ 12]. At that time, Plaintiff asked Sergeant Zabloudil if he could have another food tray, which was refused. [Doc. 40-15 at ¶ 12].

Defendant Patton, Defendant Castelin, and Officer Rogers began escorting Plaintiff to 4 West. [Id. at ¶ 13; Doc. 40-13 at ¶ 7; see Doc. 40-15 at ¶ 15]. As they were walking to 4 West, Plaintiff tried to pull away from Defendant Patton, who was holding Plaintiff's right arm in an escort position. [Doc. 40-13 at ¶ 7; Doc. 40-15 at ¶ 14]. Defendant Castelin immediately took control of Plaintiff's left arm. [Doc. 40-13 at ¶ 8]. When Plaintiff and the officers made it to the sally port on Housing Unit 6 East, Plaintiff became more aggressive and started to kick at the officers. [Id. at ¶ 9]. Officer Rogers took control of Plaintiff's legs and brought him to the floor in the prone

8

position.³ [Id. at ¶ 15]. Defendant Patton secured Plaintiff's right side, and Defendant Castelin Plaintiff's left side, with "soft hands" while Plaintiff was on the ground.⁴ Defendant Patton did not put his knee on Plaintiff's head. [Id. at ¶ 16; Doc. 40-13 at ¶ 10]. Plaintiff sustained a small cut on his chin that began to bleed. [Doc. 40-13 at ¶ 11]. Officers kept Plaintiff on the ground in the prone position until Plaintiff calmed down and agreed to comply with the officers' orders. [Id. at ¶ 12]. Once Plaintiff complied, Defendant Patton helped Plaintiff to his feet and Defendant Patton and Rogers continued to escort him to 4 West.⁵ [Id. at ¶ 13]. Defendant Patton asked Plaintiff several times if he needed medical assistance, to which Plaintiff responded, "What do you think?" [Doc. 40-15 at ¶ 17].

In transit, Plaintiff threatened Officer Rogers and Defendant Patton. [Id. at ¶ 19]. They arrived at Plaintiff's cell and Plaintiff refused to put his hands

---

³ Plaintiff did not mention Officer Rogers in his Complaint in this matter. [See Doc. 1]. In his response to the Defendants' summary judgment motion, Plaintiff claims for the first time that Officer Rogers, along with Defendant Castelin, while in the sally port and out of the view of the cameras, began to shove Plaintiff around "unprovoked and without cause," which ended in Plaintiff being lifted off the ground and driven face first into the ground. [Doc. 43 at 4-5]. As stated previously, however, there is not forecast of evidence before the Court to support such argument.

⁴ "Soft hands" are control techniques that are unlikely to cause connective tissue damage, lacerations of the skin, or broken bones but should cause compliant. [Doc. 40-1 at 12 n. 2].

⁵ Defendant Castelin remained at Housing Unit 6 East to assist in escorting Burton to 4 West, which occurred without incident. [Doc. 40-13 at ¶ 14].

on the wall and continued to make threats. Officer Rogers and Defendant Patton decided to put Plaintiff in a prone position on the floor halfway under his bunk. [Doc. 40-15 at ¶¶ 20-21]. Plaintiff complied with commands as Officer Rogers and Defendant Patton exited the cell. [Id. at ¶ 22].

Medical assistance was called for Plaintiff and he was seen by Nurse Jan Jacobson. [Doc. 40-8]. Jacobson noted a laceration to Plaintiff's chin and that she cleaned a "small [amount] of blood" from Plaintiff's chin. [Id.]. Plaintiff was not actively bleeding when Jacobson left the unit. [Id.]. Plaintiff did not request any sick calls or make any medical complaints after this incident. [Doc. 40-2 at ¶ 18]. On the day of the incident, Sergeant Zabloudil; Officers Kelly and Rogers; and Defendants Castelin, Patton, and Sims prepared witness statements. [See Docs. 40-6, 40-7, 40-16, 40-19]. The next day, Plaintiff filed a grievance alleging that Defendants Patton and Sims served Plaintiff a diabetic food tray while Plaintiff was on a kosher diet and that Defendants Castelin and Patton used excessive force him. [Id. at ¶ 21]. Lieutenant Littrell responded to Plaintiff's grievance. Littrell determined that the officers' conduct was justified based on Plaintiff's resistance and attempts to kick officers. [Doc. 40-2 at ¶ 24].

On January 31, 2019, the Detention and Courts Division Use of Force Committee reviewed the use of force incidents occurring between December

3, 2018 through January 31, 2019, including the subject incident. [Doc. 40-12]. The Committee also determined the use of force on Plaintiff to be reasonable based on the circumstances. [Id. at 2].

## IV. DISCUSSION

### A. First Amendment and RLUIPA

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief.[6] Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2)

---

[6] Although not shown by Plaintiff, the Court assumes here that Plaintiff's request for a kosher diet was related to his religion.

11

is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

An isolated incident, however, does not place a substantial burden on an inmate's exercise of his religion. Bynum v. Poole, No. 1:15CV960, 2017 WL 5466702, at *4 (M.D.N.C. Nov. 13, 2017) (granting summary judgment for defendant prison official on plaintiff's First Amendment and RLUIPA claims based on cancellation of a single religious service) (citation omitted); see also Brown v. Graham, 470 Fed. App'x 11, 15 (2nd Cir. 2012) (holding that failure to provide prisoner plaintiff a kosher meal on a single occasion is not a substantial burden under the RLUIPA); Wofford v. Austin, No. 1:16-cv-1145, 2016 WL 6275340, at *3 (W.D. Mich. Oct. 27, 2016) (finding that a single incidence of a cross-contaminated Ramadan meal does not constitute a violation of the First Amendment or RLUIPA).

Plaintiff's claim under the First Amendment and the RLUIPA are based on a single instance of Plaintiff receiving a diabetic food tray instead of a kosher food tray, albeit after Plaintiff had already been provided an kosher food tray that Plaintiff complained was unsatisfactory. A single instance of

interference with a detainee's religious beliefs does not constitute a violation of the First Amendment or RLUIPA.  See Bynum, 2017 WL 5466702, at *4; Graham, 470 Fed. App'x at 15; Wofford, 2016 WL 6275340, at *3.  There is, therefore, no issue for the jury and the Court will dismiss these claims.

### B. Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 576 U.S. 389 (2015).  The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one."  Id.  In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. (citing Graham, 490 U.S. at 396).  Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived

by the officer; and whether the plaintiff was actively resisting. Id.

Under these considerations, the uncontroverted evidence before the Court demonstrates that the force used on Plaintiff was reasonable and well within constitutional limits. After being provided a diabetic food tray, Plaintiff became argumentative and refused multiple commands to return to his cell. Plaintiff was placed in handcuffs. After Sergeant Zabloudil refused to provide Plaintiff with a third food tray, Plaintiff became more agitated. As Defendants Patton and Castelin and Officer Rogers escorted Plaintiff to 4 West, Plaintiff tried to pull away from Defendant Patton and became more aggressive and started to kick at the officers. Officer Rogers then brought Plaintiff to the ground. Plaintiff sustained a small cut to his chin while on the ground. He was allowed to get up when he calmed down and agreed to follow the officers' orders. Plaintiff was provided medical care immediately following the incident. The nurse who treated Plaintiff noted that she cleaned a small amount of blood from Plaintiff's chin. Plaintiff did not thereafter seek any medical care for injuries related to the alleged use of force.

Thus, the forecast of evidence raises no genuine issue as to whether the force employed was excessive. It is uncontroverted that the use of force was proportionate to the need for force, that Plaintiff suffered minimal injury, that Plaintiff's combativeness and aggression presented a sufficiently

14

Case 1:19-cv-00333-MR   Document 45   Filed 01/03/22   Page 14 of 17

serious security problem, and that Plaintiff was actively resisting. Thus, the force used on Plaintiff was necessary and objectively reasonable under the circumstances created by Plaintiff. The forecast of evidence, therefore, does not support that Defendants Castelin or Patton used excessive force on Plaintiff. As such, there is no genuine issue of material fact as to Plaintiff's excessive force claim, and it will be dismissed.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims. Moreover, even if the actions Plaintiff complains of were to give rise to some assertion of a constitutional violation, any right underlying such claim is not clearly established. Quite the contrary, the law is clear that neither of Plaintiff's claims rise to the level of any constitutional violation. As such, summary judgment for Defendants would also be proper for Defendants on this ground.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 40] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's motions for extension of time [Docs. 42, 44] are **GRANTED**.

The Clerk is respectfully instructed to update the docket in this matter to reflect Defendant FNU Castalone's true full name as Kevin Castelin;

Defendant FNU Patton's true full name is William Patton; and Defendant FNU Sims true full name is Gregory Sims.

The Clerk is instructed to terminate this action.

Signed: January 3, 2022

Martin Reidinger
Chief United States District Judge